```
         IN THE UNITED STATES DISTRICT COURT FOR THE
               WESTERN DISTRICT OF VIRGINIA
                     Abingdon Division

-----------------------------x
                             :
UNITED STATES OF AMERICA,    :
                             :
      Plaintiff,             :
                             :
v.                           :   1:07CR37
                             :
LONNIE E. MALONE,            :
                             :
      Defendant.             :   Abingdon, Virginia
                             :   May 19, 2008
-----------------------------x   1:31  p.m.

                        SENTENCING
           BEFORE THE HONORABLE JAMES P. JONES
            CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

      ZACHARY T. LEE, Esquire
      Assistant U.S. Attorney
      180 West Main Street
      Abingdon, Virginia  24210
          For the United States of America.

      BARRY L. PROCTOR, Esquire
      117 West Main Street
      Abingdon, Virginia  24210
          Counsel for the Defendant.
```

Proceedings recorded by Stenography, transcript produced by computer.

**BRIDGET A. DICKERT**
**UNITED STATES COURT REPORTER**
**180 WEST MAIN STREET, ROOM 104**
**ABINGDON, VIRGINIA 24210**
**(276) 628-5116**

```
 1        (Proceedings commenced at 1:31 p.m.)
 2             THE COURT:  Good afternoon, ladies and
 3   gentlemen.  The clerk will call the case.
 4             THE CLERK:  United States of America v.
 5   Lonnie Edward Malone, Case Number 1:07CR37, defendant
 6   number one.
 7             THE COURT:  This is the day scheduled for
 8   the sentencing of the defendant, Mr. Malone.  Is the
 9   Government ready?
10             MR. LEE:  Yes, Your Honor.
11             THE COURT:  Is the defendant ready?
12             MR. PROCTOR:  Yes, Your Honor.
13             THE COURT:  Mr. Malone, let me ask you a
14   question, sir, if you'll stand.  Mr. Malone, have you
15   and your lawyer read and discussed the pre-sentence
16   report?
17             THE DEFENDANT: Yes, sir.
18             THE COURT:  All right.  You may be seated.
19   As I understand, no objections have been made to the
20   advisory or to the pre-sentence report and its
21   calculation of the advisory sentencing guidelines.
22   And accordingly, I will adopt the pre-sentence report
23   as my findings of fact, as well as the guideline
24   calculations made in the report.
25        The defendant has a total offense level of 37,
```

1  and a criminal history category of one, and under the
2  advisory guidelines that translates into a guideline
3  range of 210 to 262 months as to count six, together
4  with a mandatory minimum sentence of 120 months as to
5  count one, supervised release of at least four years,
6  fine range of $20,000 to $2,000,000, and a special
7  assessment of $200.
8      And I'll be glad to hear anything that the
9  parties wish to present in regard to the appropriate
10 sentence in this case.  First, Mr. Lee?
11          MR. LEE:  Your Honor, the Government has no
12 evidence to present.
13          THE COURT:  All right.  And Mr. Proctor, do
14 you have any evidence you wish to present?
15          MR. PROCTOR:  No, Your Honor, I do not.
16 I'd just like to comment at the appropriate time.
17          THE COURT:  All right.  No evidence.  The
18 parties desire to present no evidence.  And Mr. Lee,
19 I'll be glad to hear any recommendation the
20 Government has in regard to the appropriate sentence.
21          MR. LEE:  Your Honor, the Government would
22 recommend that a sentence within the appropriate
23 guideline range, in addition to the statutory
24 mandatory term, be imposed in this case.  I
25 anticipate that the court will be asked for some sort

```
 1   of leniency based upon Mr. Malone's physical
 2   condition and his age.  I would ask the court not to
 3   be lenient on Mr. Malone.  As the court can see from
 4   the pre-sentence report, Mr. Malone's drug
 5   trafficking organization was responsible for at least
 6   distributing over five kilograms of methamphetamine
 7   in this area, and unlike many of the cases that this
 8   court sees, it was a very profitable enterprise as
 9   evidenced by the $53,000 in cash that was seized at
10   the time of the search warrant in this case.  That is
11   something that this court rarely sees.  It shows that
12   Mr. Malone was profiting heavily off of the drugs
13   that he was distributing to our communities here in
14   Southwest Virginia.  Based upon that, we would ask
15   the court to send him a message and punish him
16   severely for his conduct.
17              THE COURT:  Thank you, Mr. Lee.
18   Mr. Proctor?
19              MR. PROCTOR:  Thank you, Your Honor.  I
20   appreciate the opportunity to address the court.  We
21   take a bit of a different view than the Government,
22   as the court may well anticipate.  If I may address
23   the counts separately, concerning the firearm counts
24   that does carry a mandatory term, as the court has
25   indicated, and Mr. Lee has alluded to, of 210 months.
```

```
 1  The ten year mandatory minimum for that offense which
 2  involved possession of a shotgun, and Mr. Malone
 3  advised the officers where he had purchased that --
 4           THE COURT:  I think the mandatory minimum
 5  is 120 months.
 6           MR. PROCTOR:  120 months.  I stand
 7  corrected, Your Honor.  My math is not what it should
 8  be this afternoon.  But concerning the other count,
 9  the conspiracy count, there are certain items I would
10  like to address in connection with that.  There are
11  certain parallels.  As the court will recall, it
12  heard a co-defendant's sentencing on Valerie Chapman,
13  and Mrs. Chapman was also charged with a conspiracy
14  to distribute methamphetamine.  And the report
15  indicated that she was charged, of course, in the
16  conspiracy with the same weight and quantity of drug
17  as Mr. Malone.  I think there are certain parallels
18  between Mrs. Chapman's situation, certainly
19  differences, but there are parallels between her
20  situation and of that Mr. Malone.  I attended that
21  hearing this morning, so I heard some of the things
22  that were said in connection with that.  But
23  certainly Mrs. Chapman had a personal addiction
24  problem that led to some of her criminal behavior,
25  and the court correctly pointed out she's not here
```

1  because of her addiction, but she's here because of
2  actions she's taken to spread that addiction to the
3  community.  But Mr. Malone also is in that same
4  category.  The report indicates that he purchased,
5  started purchasing methamphetamine as a truck driver
6  back in the seventies; that he continued to use
7  methamphetamine on a daily basis up until the time of
8  his arrest in April of 2007 in connection with the
9  search warrant.  So, Mr. Malone also has that same
10 personal addiction situation that led to some of the
11 situation that he later found himself in connection
12 with.  The weight of the drug has a huge impact on
13 the guidelines that are called for in Mr. Malone's
14 case.  And the report indicates that there are other
15 individuals that he is alleged to have sold meth to
16 as a sub-distributor, but if the court will look at
17 that report closely, by and large the bulk of the
18 drugs that were attributed to being sold by
19 Mr. Malone were sold to Mrs. Chapman.  She was the
20 purchaser for those.  And I'm alluding to, I think
21 it's page five of the report at the bottom in
22 paragraph number 19, and according to her own account
23 she was the purchaser for some 4,422 grams, and
24 someone else that purchased, there was just one
25 occasion that was attributed for three grams where he

```
 1  fronted some of the methamphetamine to her, and
 2  Archie Thompson said he purchased the total of
 3  60 grams, and then the remainder of what's attributed
 4  to Mr. Malone is the grams, the 55 plus grams that
 5  were found in his residence, and then there were
 6  grams of cocaine that were less, there were less than
 7  two grams of cocaine that were found, and then a
 8  reference in a notebook to some purchase or sale that
 9  he had made that was there.  But by and large, his
10  primary source of selling these drugs was to
11  Mrs. Chapman.  And the court, for a number of reasons
12  that may not all apply to Mr. Malone's situation,
13  found that she was deserving of leniency in her
14  sentence because of the way that she had conducted
15  herself.  So, we think that there are certain
16  parallels in connection with that.  Now, as Mr. Lee
17  has alluded to, there was a quantity of cash, 53,
18  $54,000 that was found in his residence.  The
19  Government says that all comes from the drugs, and
20  certainly I think, there's a basis for assuming that,
21  but there is certainly nothing in the report or the
22  evidence thus far that would trace any of that to
23  whether that was drug money or money from any other
24  source that he kept at his home.  And we don't know
25  how much Mrs. Chapman says she paid, or how much any
```

1  of these other folks are alleged to have paid, but
2  there's no direct connection between the quantity of
3  cash other than the suspicion that it came from drug
4  sales.  But Mr. Malone has indicated he's worked as a
5  truck driver and farmer in the past, so he's held
6  legitimate sources of income.  And whether he
7  deposits his money in the bank or deposits it at
8  home, we just don't know at this point.  So, I think
9  it's inappropriate to say that he profited to the
10 extent of 53 and $54,000 without some connection
11 there between some of these drug sales.  Ms. Chapman
12 never indicated how much money she was paying for
13 these different drugs.  I think Mr. Chapman alluded
14 to have sold some for some $1,800 at some point that
15 he was purchasing it as a truck driver.  We think
16 that that's a significant factor for the court to
17 consider.  Of course, this, this charge of the
18 conspiracy carries a mandatory five years, and when
19 that's coupled with the mandatory time that he
20 receives for the shotgun account, we're looking at a
21 mandatory 15 years is the least this court could
22 consider giving him.  I do think it's relevant
23 considering his station in life and his health.
24 Mr. Malone is some 58 years of age, or will be this
25 year.  He is in poor health.  The report indicates

1   that he has certain medical conditions of which the
2   most significant is probably the rectal cancer that
3   he is suffering with, so a man approaching his
4   seventh decade, for him that sentence, if it comes to
5   an excessive amount above, or significant amount
6   above the mandatory minimums, he's going to be
7   looking basically at a life sentence.  There's no
8   question concerning that.  He was largely a law
9   abiding person for those 58 years to the extent of
10  criminal convictions.  Now, he's admitted for over a
11  period of time, significant period of time that he
12  was involved with the purchase of methamphetamine.
13  But he has just one conviction for, I believe, an
14  assault, or possession of a concealed weapon, was the
15  only conviction on his record, so he's a class one
16  criminal history background in connection with that.
17  So, it's not someone who has been a revolving door
18  with the court.  He has been not in the court system
19  up until these matters were discovered, and to what
20  point he became involved to the extent he is now,
21  it's really not clear from the report.  I think
22  Mrs. Chapman said she started purchasing from him in
23  those quantities in 2005, so that would be within the
24  last couple of years that he would have been involved
25  to the extent that he was when he was arrested in

```
 1  connection with that.  So, we would just ask the
 2  court to consider all those factors, and I would hope
 3  to find some parallels between Mr. Malone's situation
 4  and Ms. Chapman's, and to the extent that the bulk of
 5  these drugs, or the amounts generated from that were
 6  sales to one person.  We would ask the court to
 7  consider his health and his age in crafting an
 8  appropriate disposition.
 9            THE COURT:  All right.  Anything further?
10  Mr. Lee, do you have anything further?
11            MR. LEE:  Your Honor, I would just say I
12  don't believe that there are any parallels that
13  should be drawn between Ms. Chapman and Mr. Malone.
14  Ms. Chapman presented to this court earlier today as
15  an addict that had more or less lost everything that
16  was important to her, her children had been taken
17  away, in essence, by her own mother based on her drug
18  addiction.  She had serious health problems that led
19  her to the point that she became involved with
20  Mr. Malone, and became hooked on the painkillers and
21  the methamphetamine.  Mr. Malone presents very
22  differently.  He is a man that has not lost
23  everything.  He was living in his own home, he had a
24  significant collection of firearms that I'm sure the
25  value was fairly high, he had 53,000 plus dollars in
```

```
 1  cash, and while Mr. Proctor has stated there's no
 2  evidence that that came from his drug dealing
 3  activities, Mr. Malone has consented to the
 4  forfeiture of all of that money, and has not
 5  presented any evidence to this court to show that
 6  there's anything other than the proceeds of his drug
 7  trafficking activities.  And the pre-sentence report
 8  shows that there is no legitimate source of income
 9  that would account for that money.  And based on all
10  those factors, we would ask the court to sentence
11  Mr. Malone appropriately.
12              THE COURT:  Mr. Lee, let me ask you about
13  the forfeiture.  Is the court required to enter any
14  sort of order in regard to forfeiture in this case?
15              MR. LEE:  I believe a preliminary order has
16  been entered, and we'd ask that the order of
17  forfeiture be made part of the judgment and sentence.
18              THE COURT:  All right.  Anything further?
19              MR. PROCTOR:  No, Your Honor.
20              THE COURT:  I'm prepared to impose sentence
21  at this time.  Mr. Malone, if you'd stand, sir.  Is
22  there anything you wish to say to me before I
23  pronounce sentence in your case?
24              THE DEFENDANT:  No, sir.
25              THE COURT:  All right.  Well, I believe
```

```
 1   that there are substantial differences between
 2   Mr. Malone's case and that of his co-defendant,
 3   Ms. Chapman.  In the first place, of course,
 4   Ms. Chapman was the beneficiary of a motion for
 5   downward departure by the Government for her
 6   extensive cooperation in this case.  I think there is
 7   evidence that Mr. Malone was involved in a large
 8   scale drug trafficking conspiracy for which he
 9   received substantial amounts of money.  A large
10   amount of money, of course, was seized from him.  The
11   pre-sentence report indicates that he has no other
12   assets except a small amount of cash and a motor
13   vehicle, and that during the offense he was
14   unemployed, although he had prior experiences as a
15   truck driver and as a farmer.  But without, without
16   current assets and without regular employment, it's
17   clear to me, at least, that funds that were seized
18   from him came from his drug trafficking business.
19   And for that reason I believe that his case is
20   substantially different from that of his
21   co-defendant.  I believe that a sentence within the
22   guideline range appropriate in this case, in view of
23   the harm and potential for harm that a drug
24   trafficking conspiracy such as that which Mr. Malone
25   led causes to the community.  Pursuant to the
```

Sentencing Reform Act and having considered the factors set forth in 18 United States Code Section 3553(a), and having consulted the advisory sentencing guidelines, it is the judgment of the court that the defendant, Lonnie Edward Malone, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 330 months.  This term consists of 210 months on count six, and 120 months on count one to run consecutive to the term imposed on count six.  Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years.  This term consists of terms of five years on each count to run concurrently.  He must report to the probation office in the district to which he is released within 72 hours of release from custody.  He must comply with the following mandatory conditions of supervision.  He must not commit another federal, state or local crime; he must not unlawfully possess a controlled substance, and must refrain from the unlawful use of a controlled substance; he must submit to one drug test within 15 days of release from imprisonment, and at least two periodic drug tests thereafter as determined by the court.  He must not possess a firearm, ammunition, destructive device or other dangerous weapon.  He

```
 1   must cooperate in the collection of DNA as directed
 2   by the probation officer.  He must comply with the
 3   standard conditions of supervision that have been
 4   adopted by the court, as well as the following
 5   special conditions.  He must pay any monetary penalty
 6   imposed by this judgment.  He must participate in the
 7   program of testing and treatment for substance abuse
 8   as directed by the probation officer until he is
 9   released from the program by the officer.  He must
10   reside in a residence free of firearms, ammunition,
11   destructive devices and dangerous weapons.  He must
12   submit to warrantless seizure of person and property
13   by the probation officer or other law enforcement
14   officer whenever such officer has reasonable
15   suspicion that the defendant is engaged in criminal
16   activity.  He must pay to the United States a special
17   assessment of $200, which is due immediately.  The
18   court finds that the defendant does not have the
19   ability to pay a fine, and will waive any fine in
20   this case.  Pursuant to the plea agreement in the
21   case, counts two, three, four and five are hereby
22   dismissed as they pertain to this defendant.  I
23   advise the defendant that he has waived his right to
24   appeal this sentence, and that waiver is binding
25   unless the sentence exceeds the statutory maximum or
```

1  is based on a constitutionally impermissible factor.
2  If the right of appeal does exist, a person who is
3  unable to pay the costs may apply for leave to appeal
4  without pre-payment of such costs.  Any notice of
5  appeal must be filed within ten days of the entry of
6  judgment, or within ten days of a notice of appeal by
7  the Government.  If requested, the clerk will prepare
8  and file a notice of appeal on behalf of the
9  defendant.  Are there any further matters that the
10 court must resolve in this case?
11           MR. PROCTOR:  Your Honor, two matters.  He
12 is requesting the court recommend that he be
13 incarcerated at the federal institution at Beckley,
14 West Virginia, and also he be recommended for the
15 residential drug treatment program.
16           THE COURT:  Very well.  I will recommend
17 both of those matters to the Bureau of Prisons.  If
18 there's nothing further, then, we'll adjourn court.
19       (Proceedings concluded at 1:50 p.m.)
20
21
22
23
24
25

```
 1

 2

 3                         CERTIFICATE

 4

 5      I certify the foregoing is an accurate transcript

 6  from the record of proceedings in the above-entitled

 7  matter.

 8

 9

10  10/8/08                    /s/ Bridget A. Dickert
    Date                       U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```